UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IMAGINARY IMAGES INC. *et al.*,

                                Plaintiffs,

        v.                                                    Action No. 3:08–CV–398

PAMELA O'BERRY EVANS, *et al.*,

                                Defendants.

MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs (Docket No. 39).  For the reasons stated below, Plaintiffs' Motion will be GRANTED for the amount of $16,462.88 in attorneys' fees and $3,144.69 in costs.

I.  BACKGROUND

On June 26, 2008, Plaintiffs, Imaginary Images, Inc., BTF3, LLC, and Papermoon Springfield, Inc. ("Plaintiffs") filed a Complaint, a Motion for TRO, and a Motion for Preliminary Injunction asserting violations of their constitutional rights by the Virginia ABC Board ("ABC").[1]  These violations stemmed from specific Virginia code sections and an ABC Regulation restricting the sale of mixed beverages at adult entertainment establishments.

---

[1]        Defendants in this case are members of the Virginia ABC Board, Pamela O'Berry Evans, Susan Swecker, and Esther H. Vassar.

1

Prior to the actions taken by this Court, the Norfolk Division of the Eastern District of Virginia enjoined these statutes and regulation from enforcement because they were unconstitutionally overbroad and vague.  <u>Norfolk 302, LLC v. Vassar</u>, 524 F. Supp. 2d 728 (E.D. Va. 2007).  As a result of this decision, adult entertainment establishments gained access to mixed liquor licenses—something previously prohibited.   The statutes were revised by the Virginia General Assembly, according to the <u>Norfolk 302</u> decision, and the revisions became effective July 1, 2008.

On September 16, 2008, this Court granted the TRO with respect to two of the challenged statutes, Virginia Code sections 4.1-222(A)(1)(g) and 4.1-223(3) because both contained problematic unconstitutional language that had not been corrected by the 2008 revisions.  Defendants acknowledged this, and indicated that these statutes would be revised in the then-upcoming General Assembly session beginning in January 2009.  The Court refused to enjoin the remaining challenged statutes and regulation because Plaintiffs had not shown a likelihood that a constitutional challenge to these provisions would prevail.

The parties held an Evidentiary Hearing on November 24, 2008, to present evidence specifically focused on the purported unconstitutional content based restrictions and absence of negative secondary effects related to mixed beverage licenses and adult entertainment establishments.  On December 19, 2008, this Court declined to enjoin Virginia Code sections 4.1-226, 4.1-325, and ABC Regulation, 3 Va. Admin. Code § 5-50-140, but enjoined the phrase "reasonably separated" included

within the Regulation.  Thereafter, the Court entered a Final Judgment Order,

making the December 19 decision the final disposition in the case.

Plaintiffs now request attorneys' fees and costs as the prevailing parties of this

litigation.  Defendants object, citing Plaintiffs' limited success in this litigation and

requests that this Court either deny Plaintiffs' Motion or substantially reduce any

fees to be commensurate with the outcome of this case.

## II.  ANALYSIS

The Court has discretion to award attorneys' fees to the prevailing party when

the action was brought to enforce rights protected under 42 U.S.C. § 1983.  42 U.S.C.

§ 1988.  Costs for litigating such an action are available pursuant to § 1988 and

Federal Rule of Civil Procedure 54.  See Harper v. Public Service Comm'n of West Va.,

427 F. Supp. 2d 707, 724 (S.D.W. Va. 2006).  Because Plaintiffs prevailed on a few of

the claims asserted before this Court, they are entitled to some amount of attorneys'

fees and costs.  Accordingly, this Court must determine if the amounts requested for

attorneys' fees and costs are reasonable.

### A.  Costs

Imaginary Images submits that they expended $3,144.69 in costs to litigate

this matter.  These costs include counsel's travel expenses, FedEx charges, the filing

fee, and the court admission fee.  Defendants make no specific argument as to the

validity of these costs, but makes the general argument that Plaintiffs are not

necessarily the prevailing party in this matter, and therefore not entitled to full costs
and fees.

Plaintiffs are correct that 42 U.S.C. § 1988 and 28 U.S.C. § 1920 permit recovery
of reasonable library costs, photocopying, travel expenses, telephone charges, and
court costs.  The lion's share of the costs submitted for recovery comes from the
travel expenses for counsel to travel from Ohio to Virginia, which appear to be
reasonable.  In addition, the filing fee, the admission fee, and the FedEx charges also
appear to be reasonable.  Therefore, the Court will award $3,144.69 in costs to
Plaintiffs.

B.  Attorneys' fees

Although deciding whether to award attorneys' fees is a matter within the
discretion of a district court, in determining the amount of an award the court must
consider, and make detailed findings of fact with respect to, twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal
> services rendered; (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work; (6) the attorney's
> expectations at the outset of the litigation; (7) the time limitations imposed
> by the client or circumstances; (8) the amount in controversy and the
> results obtained; (9) the experience, reputation[,] and ability of the
> attorney; (10) the undesirability of the case within the legal community in
> which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees awards
> in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 & n.28 (4th Cir. 1978).  But see Arnold v.
Burger King, 719 F.2d 63, 67 n.4 (4th Cir. 1983) (stating that a court is not required to
attribute at length a portion of the award to each factor); Colonial Williamsburg

Found. v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994) (affirming a court's award of attorneys' fees, even though the court "did not specifically address all of the factors enunciated in Barber"); Sun Pub. Co. v. Mecklenburg News, Inc., 823 F.2d 818, 819 (4th Cir. 1987) (ruling that a court may deny a motion for attorneys' fees that is "so exorbitant" that it "shocks the conscience of the court" without applying those factors).

Of those factors, the eighth—the "degree of success" that a party achieves—is the most important.  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); accord Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007) (ruling that the "extent of the relief" that a party obtains is a "particularly important" factor, because it indicates the strength of the party's position).  Thus, if a party does not triumph completely, it should be awarded fees in proportion to the results that it obtained. Hensley, 461 U.S. at 440.  In fact, if the amount of damages that a party is awarded suggests that the party is entitled to little—or none—of its attorneys' fees, a court may proceed "without reciting the [twelve] factors bearing on reasonableness." Farrar v. Hobby, 506 U.S. 103, 115 (1992).  But, as the Fourth Circuit recently stated, an award of attorneys' fees should not be "reflexively reduce[d] . . . whenever damages fail to meet a plaintiff's expectations."  Nigh, 478 F.3d at 190.

Factors 1, 2, & 3: Time and labor, novelty and difficulty of the questions, and required skill

Plaintiffs assert that they "vigorously prosecuted" these claims by filing the Complaint, Motion for TRO, and Motion for Preliminary Injunction simultaneously. These filings presented complicated constitutional arguments that challenged laws

restricting mixed beverage permits as unconstitutional under the First and Fourteenth Amendments. As a result, this case required attorneys with significant experience in litigating civil rights cases, including those focused on First Amendment law. Plaintiffs assert their counsel had the requisite skill to formulate these Motions and prepare for the hearings.

It is true that filing the type of motions filed in this case does take a significant amount of time, effort, and skill, all of which Plaintiffs' counsel demonstrated in their litigation of these claims. The novelty of these questions factor was not addressed by Plaintiffs, but taken with the time and skill exerted in this case, these factors tend to support the award of attorneys fees.

Factors 5 & 6: Customary fees and attorneys' expectations

Plaintiffs' submit that they agreed to pay counsel for the hours worked and that the hourly rates charged for the work is "well within the rates charged for their services and other attorneys who share similar skills and experience in First Amendment litigation." (Pls.' Mem. in Support Mot. for Award of Attorney's Fees & Costs, 5.)

Mr. Murray's hourly rate is $300/hour and Mr. Shafron's hourly rate is $250/hour. (Pls.' Mem. Attach A, Declaration of J. Michael Murray, ¶ 22.) These appear to be standard rates for attorneys, especially considering the specialized knowledge of attorneys who work on First Amendment cases. Although, Plaintiffs do not address the attorney expectations factor at all, because the fees appear to be customary, these factors also support the award of some amount of attorneys' fees.

<u>Factors 4 & 7: Opportunity costs and time limitations</u>

Plaintiffs contend that the time requirements of this case warrant an award of attorneys' fees because the laws challenged were newly-enacted forcing the attorneys to work quickly to prevent their enforcement.  Plaintiffs are correct that this type of case—injunctions against enforcement of state laws—require quick action, however, Plaintiffs do not address how other representation opportunities were lost by agreeing to litigate this case, or how time limitations specifically impacted this case.  For this reason, this factor is neutral with regard to the award of attorneys' fees.

<u>Factor 8:  Amount in controversy and results obtained</u>

The main dispute in this case arises, primarily, over the results Plaintiffs obtained.  Plaintiffs concede that they were unsuccessful on some of their claims, which they feel is reflected by the proposed 50% award reduction.  (Pls.' Mem., 6.) Defendants allege that they immediately acknowledged the problematic language contained in sections 4.1-222 and 4.1-223, thereby making these undisputed issues by the time of the TRO hearing.  Additionally, Defendants contend that Plaintiffs only prevailed on one disputed issue—the vagueness of the term "reasonably separated"—out of "all the disputed issues (the distinction between mixed beverages and beer, the alleged overbreadth of the challenged statutes and

regulation, and the alleged vagueness of five terms or phrases)." (Defs.' Mem. in Opp'n Pls.' Mot. for Attorneys' Fees, 3.)

First, the Court recognizes that Defendants quickly acknowledged the problematic language in sections 4.1-222 and 4.1-223, and that Plaintiffs obtained their relief sought—injunction against enforcement of these sections—after this Court's Order on September 16, 2008. For this reason, the fees for the work on these code sections will be reduced significantly because Defendants readily admitted the unconstitutionality of the phrases and this Court enjoined these sections based on Defendants' representations.

Second, after the TRO hearing, Defendants mounted an attack primarily focused on the content-based restrictions of the remaining statutes and regulation. The Evidentiary Hearing examined the evidence of negative secondary effects associated with adult entertainment establishments that ABC used to justify prohibiting mixed liquor licenses in those venues. This Court rejected Plaintiffs' contentions that such negative secondary effects did not exist, and refused to enjoin sections 4.1-226, 4.1-325 and the ABC regulation because Plaintiffs had failed to prove that the statutes were vague, overbroad, or that there was insufficient evidence that the restrictions were narrowly tailored to further an important government interest. The Court did, however, find that Plaintiffs had demonstrated a likelihood that they would prevail on a challenge to the phrase "reasonably separated." Thus, the Court enjoined the phrase. Accordingly, a majority of

8

Plaintiffs' work done after September 16 resulted in prevailing on only one more of the arguments submitted to the Court.

Therefore, factor 8 weighs in favor of substantially reducing the amount of fees awarded, because Plaintiffs' success was, overall, minimal.

Factors 9, 10, 11, & 12: Attorney's experience, reputation, and ability; undesirability of the case; nature and length of the attorney-client relationship; and awards in similar cases

Plaintiffs do not address these factors in their memo, however, a detailed account of Mr. Murray and Mr. Shafron's experience and ability is contained within their memorandum and the attached affidavits.  Plaintiffs' counsel appear to have extensive experience in litigation, especially in the area of First Amendment law, which leans in favor of a fee award.  (See Pls.' Mem. 7–10.)

In summary, the Court finds that because of Plaintiffs' limited success, only a portion of the submitted fees will be awarded for the work done in this case.

Lodestar amount

Next, the Court must consider the overall reasonableness of the fees submitted to the Court.  On the basis of the above factors, the Court must determine how many hours were reasonably spent on the litigation and the rate at which that work should be compensated.  See McDonnell v. Miller Oil Co., Inc., 134 F.3d 638, 640 (4th Cir. 1998).  On that basis, the court can determine a "lodestar figure."  Id.; see Arnold, 719 F.2d at 67 n.4 (noting that calculating the lodestar figure takes into account "many of the [Barber] factors," which do not need to be considered further); see also Colonial Williamsburg Found., 38 F.3d at 138 (ruling that a court should "first focus on the time and labor expended and the customary fees for like work," and then

9

"consider whether to adjust [the size of an award of attorneys' fees] on the basis of the other factors").

Plaintiffs assert that their counsels' fees ($250–$300 per hour) and the time spent litigating this case were both reasonable.  Mr. Murray spend 70.5 hours at the rate of $300.00 an hour, resulting in a total fee of $21,150.00.  Mr. Shafron worked 114.5 hours at the rate of $250.00 an hour, resulting in a total fee of $28,737.50.  (See Pls.' Mem. 12; Murray Decl. ¶¶ 22; Murray Decl. Ex. A.)  Defendants make no argument as to the reasonableness or the unreasonableness of these fees or hours.

The hours worked and the fees submitted for the hours worked is reasonable, however, given the previously-discussed Barber factors, the Court will award 33% of the submitted fees.  This results in an award of $16,462.88 in attorneys' fees for Plaintiffs.

### III.  CONCLUSION

For the reasons stated above, the Court will award costs in the amount of $3,144.69, and a portion of the submitted fees in the amount of $16,462.88, an amount which reflects Plaintiffs' success in this matter.

Let the Clerk send a copy of this Order to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __12th__ day of August 2009